| | |
|---|---|
| ROBERT MITCHELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CDCR SECRETARY JEFFERY BEARD, et al.,<br><br>　　　　Defendants. | Case No. 1:17 -cv-01032-SAB<br><br>ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 1)<br><br>THIRTY DAY DEADLINE |

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Plaintiff Robert Mitchell ("Plaintiff"), a former state prisoner, proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 in the Central District of California. On August 3, 3017, the matter was transferred to the Eastern District of California. Currently before the Court is Plaintiff's complaint, filed June 12, 2017.

**I.**

**SCREENING REQUIREMENT**

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners);

Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Therefore the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

At the time of the incidents alleged in the complaint, Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and was housed at the

California Substance Abuse Treatment Facility (CSATF) in Corcoran, California. (Compl. ¶ 3, ECF No. 1.) Plaintiff brings this action against twenty named Defendants employed at the CDCR or CSATF.

CDCR has a statewide policy that sets standardized procedures for screening, classifying, validating and housing security threat group members ("STG"), gang members, and their associates with a documented history of violence and serious rules violations that all prisons must follow. (Compl. at ¶ 25.) Plaintiff alleges that it is an official policy, custom, or practice of CDCR not to adhere to the state prison gang validation policies and procedures. (Compl. at ¶ 27.) Plaintiff contends that it is the official policy of the CDCR to racially classify STG members, gang members, and their associates and use their racial group classifications to house them by race in the general population, prison yards, and housing units with other non-affiliated prisoners. (Compl. at ¶ 28.)

Plaintiff is a disabled African-American and states that due to this system, he has been subjected to assaults by gang members, race based classifications and housing assignments with gang members, denied access to rehabilitation programs and activities and dayroom activities. (Compl. at ¶¶ 29, 36.) Plaintiff contends there is no rational basis or legitimate penological interest in failing to adhere to the state prison gang validation regulations and procedures set forth in Title 15 section 3378.

Plaintiff contends that CDCR Secretary Jeffery Beard, CDCR Senior Legal Policy Advisor Benjamin Rice, CDCR Undersecretary Scott Kernan, Division of Adult Institutions Director Kelly Harrington, Facility Operations Deputy Director Ralph Diaz, General Population Associate Director Connie Gibson, Operations Support Assistant Deputy Director Vincent Cullen, Reception Centers Associate Director Amy Miller, Office of Policy Standardization Natalia Fransham, High Security Associate Director Sandra Alfaro, CSATF Warden Stu Sherman, CSATF Associate Warden Collins, CSATF Sergeant D. Ibarra and all CDCR high security personnel are deliberately not adhering to the state prison gang policy procedures set forth in section 3378. (Compl. at ¶ 30.) Plaintiff alleges that the defendants are intentionally deliberately indifferent by maintaining deficient prison facility staffing in all CDCR prisons, and

3

have failed to properly train, monitor and supervise subordinate personnel in adhering to gang validation policies and procedures as set forth in section 3378. (Compl. at ¶ 32.)

Plaintiff contends that in a prior lawsuit Defendants admitted that they do not follow section 3378.[1] (Compl. at ¶¶ 33, 34.) Plaintiff argues that despite Defendants acknowledging that STG members, gang members, and their associates are the root of the risk to prison security, Defendants have intentionally kept prison staffing well below safe levels to effectively manage the problem. (Compl. at ¶ 35.)

Plaintiff alleges that Defendants have allowed STG members, gang members, and their associates to pressure non-gang affiliated inmates to provide their paperwork and refusal to cooperate will result in an assault by a gang affiliated inmate; operate on and control the day to day atmosphere on the given prison facility, yard, or housing unit; claim prison real estate; demand segregated cells, housing units and working environments; punish and reprimand non-gang affiliated inmates for violating prison policies or rules; and Defendants solicit input from gang leaders about whether a lockdown or modified program should be lifted. (Compl. at ¶ 38.)

Plaintiff alleges that he has suffered injuries including severe pain, swelling, bruising, a fractured right finger, torn muscles, torn supraspinatus tendon in the right shoulder, torn ligaments, humiliation, indignities and physical, mental, and emotional pain and suffering. (Compl. at ¶ 39.) Plaintiff was assaulted on July 30, 2015, at 6:50 p.m. when there was only one correctional officer, Defendant Dean, working in the building. (Compl. at ¶ 42.) This officer was to stay in the building and manage approximately 353 male inmates during dinner. (Compl. at ¶ 43.) Approximately 80 percent of the inmates in the facility were STG members, gang members, or their affiliates. (Compl. at ¶ 44.)

After Plaintiff returned to his housing facility, a facility alarm was activated in Plaintiff's housing unit, and Defendant Dean activated her emergency alarm. (Comp. at ¶¶ 46, 47.) She left her post and went to B section. (Compl. at ¶ 47.) While Defendant Dean was responding to the emergency, Plaintiff was attacked by two southern Hispanic inmates. (Compl. at ¶ 48.)

---

[1] The Court takes judicial notice that Plaintiff entered into a class action settlement in Mitchell v. Felker, No. 2:08-cv-01196-TLN-EFB (E.D. Cal. Dec. 20, 2016) which appears to contain some allegations similar to the instant lawsuit.

Plaintiff was able to fight back and fend off the physical assault with the help of other inmates. (Compl. at ¶ 49.) Plaintiff was not checked on or provided medical treatment. (Compl. at ¶ 50.)

Immediately after the July 30, 2015 incident, Defendant Dean identified a total of 11 STG members, and gang members and gang associates that caused the prison riot. (Compl. at ¶ 74.) These individuals were removed from the prison population and placed into Administrative Segregation. (Compl. at ¶ 75.) The facility was placed on lockdown and modified program for two weeks and these individuals were provided with medical treatment. (Compl. at ¶ 76.) While the lockdown and modified program were in place, Defendants conducted an investigation into the cause of the July 30, 2015 incident. (Compl. at ¶ 77.) Threat assessments and interviews were conducted with SGT members, gang members, and their associates. (Compl. at ¶ 78.) At no time during this assessment was Plaintiff or other non-affiliated disabled African American prisoners interviewed. (Compl. at ¶ 79.) Following the investigation, the defendants issued the following findings:

> On Thursday, July 30, 2015, at approximately 1856 hours, a riot occurred on Facility ("F"), Building 2 between STG II Surenos, STG II Paisas, and STG II Crips, which resulted in a Code II response to quell the incident. An administrative decision was made to place Facility ("F") on Modified Program pending investigations, interviews and searches on the facility.
>
> On August 7, 2015, a Threat Assessment was conducted for Facility ("F") relative to the riot that occurred between the STG II Surenos and the STG II Crips. At the conclusion of the Threat Assessment, an administrative decision was made to return Facility ("F") to Normal Program.

(Compl. at ¶ 82.)

After the assessment, Defendants made the decision not to remove all STG members, gang members, and their associates from the general population. (Compl. at ¶ 82.) Plaintiff contends that Defendants engaged with and cede control of the state prison to known violent and dangerous STG members, gang members, and their associates, allowed them to remain in the general population, allowed these groups prison real estate, allowed these groups to racially segregate prison facilities, and solicited input from gang leaders about whether the lockdown or modified program should be lifted. (Compl. at ¶ 85.) Plaintiff contends that Defendants failed to hire enough correctional personnel to effectively manage the scope of CDCR's gang problem,

and failed to adhere to the state prison gang validation policy set forth in section 3378. (Compl. at ¶ 86.) Since arriving in CDCR in 2000, Plaintiff has continuously protested for STG members, gang members, and their associates to be removed from the general population facilities, prison yards, and housing units away from non-affiliated disabled prisoners. (Compl. at ¶ 92.)

Plaintiff submitted several Health Care requests forms to Dr. Igbinosa seeking treatment for an injury to his right hand and shoulder. (Compl. at ¶ 51.) Plaintiff explained that he was experiencing severe stabbing pain in this right shoulder, numbness down his right arm, a tingling sensation in his right fingers, and was unable to sleep due to the pain which he stated was 10 out of 10. (Compl. at ¶ 52.) Plaintiff was seen by Dr. Igbinosa on August 30, 2015. (Compl. at ¶ 54.) After telling Dr. Igbinosa of his symptoms, Dr. Igbinosa did a cursory examination and told Plaintiff that he had suffered a complete tear of the supraspinatus tendon that would require surgery to repair and that an x-ray/MRI would be required to confirm the diagnosis. (Compl. at ¶¶ 56, 58.) Plaintiff asked if an MRI would be ordered, but Dr. Igbinosa said that only an x-ray would be ordered. (Compl. at ¶ 60.) Plaintiff states that Dr. Igbinosa told him that MRIs are expensive and his bosses in Sacramento told him not to order MRIs immediately after an incident, but to order an x-ray because it would not show soft tissue injury which would show on an MRI. (Compl. at ¶ 62.) That way they do not have to treat soft tissue injuries and waste millions of dollars treating inmates. (Compl. at ¶ 62.) Plaintiff told Dr. Igbinosa that he could not move his shoulder because of the pain, and Dr. Igbinosa replied that he would only order an x-ray and if Plaintiff did not like it he could file a 602. (Compl. at ¶¶ 63-64.)

Plaintiff continued to submit medical requests that went unanswered. (Compl. at ¶ 65.) Plaintiff believes that Dr. Igbinosa was acting pursuant to the customs, policies, and practices of Defendants Diana Touche, Health Care Services Undersecretary of the CDCR; Tim Balavich, Director of California Health Care Services; Clarence Cryer, Chief Executive Officer of Health Care Services, Chuka Ugwueze, Chief Medical Executive Officer of Health Care Services; and J. Lewis, Deputy Director of Policy and Risk Management Services for California Correctional Health Care Services. (Compl. at ¶ 69.)

Plaintiff is seeking monetary damages, declaratory relief, and injunctive relief. (Compl. at ¶ 97.) Plaintiff seeks to require CDCR to hire enough correctional personnel to effectively manage the scope of CDCR's gang problem; stop racially classifying and housing STG members, gang members, and their affiliates on general population facilities; start adhering to the policies and procedures set forth in Title 15, section 3378 and place STG members, gang members, and their associates away from non-affiliated disabled prisoners. (Compl. at ¶ 97.)

Plaintiff submitted a timely claim to the California State Government Claim Board which was denied in its entirety on October 15, 2015. (Compl. at ¶ 107.)

Plaintiff brings claims for failure to protect, denial of medical care, equal protection, and state law claims of intentional infliction of emotional distress, personal injury, negligence and negligent infliction of emotional distress.

For the reasons discussed below, the Court finds that Plaintiff has failed to state a cognizable claim. Plaintiff shall be provided with the standards that apply to his claims and will be provided with the opportunity to file an amended complaint to cure the deficiencies in his complaint.

## III.
## DISCUSSION

### A. Linkage Requirement

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under section 1983, Plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Long, 442 F.3d at 1185. There is no respondeat superior liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

**B.     Eight Amendment Claims**

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). In order to state a claim, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 847; Frost, 152 F.3d at 1128.

1.     Denial of Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d

1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122 ("The deliberate indifference doctrine is limited in scope.").

Plaintiff alleges that he was not provided medical care following the riot, but he fails to identify any named defendant who was informed of or aware that Plaintiff needed to be provided with medical care immediately following the incidents alleged. Plaintiff has failed to state a claim for the denial of medical care immediately following the riot.

Plaintiff also contends that he submitted a request for medical care to Defendant Igbinosa and was not seen by Defendant Igbinosa until approximately one month after the riot. However, it is unclear from the complaint if Plaintiff received treatment by other medical providers during this time period. Based on the Court's knowledge of the prison medical system, there are nurses and medical personnel available at the prison to evaluate inmates and refer them for medical treatment by the physician. Plaintiff's complaint that he submitted a medical request to see Dr. Igbinosa does not demonstrate that Dr. Igbinosa was aware of his need for treatment prior to the appointment on August 30, 2015.

Finally, Plaintiff alleges that Dr. Igbinosa examined him on August 30, 2015, told him that he had suffered a complete tear of the supraspinatus tendon that would require surgery to repair, and that an x-ray/MRI would be required to confirm the diagnosis. While Plaintiff complains that he did not receive an MRI, Dr. Igbinosa ordered an x-ray to confirm his diagnosis. Plaintiff's complaint contains no factual allegations that he suffered any delay or

denial of treatment by being provided with an x-ray rather than an MRI to confirm the suspected diagnosis. While Plaintiff may have wanted an MRI, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, a plaintiff is required to show that the course of treatment selected was "medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow, 681 F.3d at 988 (quoting Jackson, 90 F.3d at 332). Plaintiff fails to state a claim against Dr. Igbinosa based on the failure to order an MRI on August 30, 2015.

Plaintiff does not allege any facts by which the Court can draw the reasonable conclusion that Defendant Igbinosa was aware that Plaintiff had a serious medical need and failed to adequately respond. Iqbal, 556 U.S. at 678. Plaintiff has failed to state a cognizable claim against Defendant Igbinosa.

### 2. Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

Plaintiff's assertion that STG members, gang members, and their associates are housed in the general population and that Defendants have admitted that these groups are the root of the risk to prison security does not subject Defendants to liability for failure to protect under the

Eighth Amendment. Plaintiff has not identified any threat to his safety that Defendant Dean was aware of prior to the riot or any facts to demonstrate that any defendant was aware that the prison riot was going to occur or that he was going to be attacked by other inmates on July 30, 2015.

Plaintiff's allegations based on STG members, gang members, and their associates being housed in the general population amount to nothing more than a generalized fear of harm which fails to state a cognizable claim for relief. See, e.g., Funk v. Schriro, No. CV 08-0739-PHX-GMS (JCG), 2009 WL 4898262, at *7 (D. Ariz. Dec. 14, 2009) (plaintiff's claim that he was forced to endure "constant threat of violence" "too general and conclusory" to make objective showing of substantial risk of harm); Hoptowit v. Ray, 682 F.2d 1237, 1256 (9th Cir. 1982) ("[M]isclassification does not itself inflict pain within the meaning of the Eighth Amendment."), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Indeed, the Ninth Circuit has held that even housing inmates of opposite gangs in the same cell, does not alone, state a claim under the Eighth Amendment. See Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1161 (9th Cir. 2013) (although Plaintiff held subjective fear for his safety, there was no specific information from which Defendants could draw an inference that plaintiff was exposed to a specific threat).

Plaintiff has failed to allege facts by which the Court can infer that any named defendant was aware that Plaintiff was at a risk of harm and failed to adequately respond. Accordingly, the Court finds that Plaintiff has failed to state a cognizable failure to protect claim.

### C. Equal Protection

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Turner v. Safley, 482 U.S. 78, 84 (1987); Bell, 441 U.S. at 545. There are two ways for a plaintiff to state an equal protection claim. A plaintiff can state a claim for violation of the Equal Protection Clause, by showing "that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003). Intentional in this context means that the defendant acted, at least in part, because of the plaintiff's membership in a protected class. Serrano, 345 F.3d at

1082. Alternately, the plaintiff can state a claim by alleging that he was intentionally treated differently than similarly situated individuals and there was no rational basis for the difference in treatment. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Plaintiff has failed to allege any facts that he was discriminated against because of his membership in a protected class or that he was treated differently than similarly situated inmates. Plaintiff has failed to state a cognizable equal protection claim.

### D. Policy and Custom Claims

Plaintiff attempts to assert claims based on a custom and policy of housing STG members, gang members, and their associates in the general population; failing to provide adequate custody staff; and cutting inmate health care costs relating to properly diagnosing, treating, and administering medical treatment to inmates immediately following an incident.

#### 1. Violation of CDCR Regulations/Policy

First, Plaintiff contends that Defendants have failed to comply with the state prison gang validation policy set forth in Title 15, section 3378. "[W]hen a violation of state law causes the deprivation of a right protected by the United States Constitution, that violation may form the basis for a Section 1983 action." Lovell v. Poway Unified School Dist., 90 F.3d 367, 370 (9th Cir. 1996) (citation omitted). "However, Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal Constitution and laws," and "[t]o the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress." Lovell, 90 F.3d at 370-71 (citation and internal quotation marks omitted). In addition, conduct may violate a written policy without violating the Constitution. See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (federal due process is not implicated when prison officials fail to comply with state procedural protections that are more generous than those that are constitutionally mandated), overruled on other grounds by Sandin, 515 U.S. at 483-84; Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process, if constitutional

12

minima are nevertheless met.").

Thus, the mere violation of a prison rule or regulation does not necessarily establish a constitutional violation. Plaintiff has not alleged any facts by which the Court can reasonably infer that the failure to follow section 3378 violated Plaintiff's constitutional rights. Accordingly, Plaintiff fails to state a cognizable claim for relief for an alleged violation of a CDCR regulation and/or policy.

### 2. Supervisor Liability

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Crowley, 734 F.3d at 977 (citation and internal quotation marks omitted). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Id.

Plaintiff brings this action against supervisory personnel claiming that they are responsible for policies at CSATF. However, Plaintiff has failed to state a claim for a violation of his constitutional rights. Even accepting Plaintiff's allegations as true, there are no facts alleged to show that any policy implemented by a named defendant was so deficient that it was itself a violation of his constitutional rights or that any policy he has identified was the moving force behind a constitutional violation. Plaintiff's conclusory allegations are insufficient to state a claim against any named defendant based on a policy or custom. Iqbal, 556 U.S. at 681.

### E. Joinder

A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence,

or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

The Court advises Plaintiff that each claim that is raised in his first amended complaint must be permitted by either Rule 18 or Rule 20. Plaintiff may state a single claim against a single defendant. Plaintiff may then add any additional claims to his action that are against the same defendant under Rule 18. Fed. R. Civ. P. 18. Plaintiff may also add any additional claims against other defendants if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2). Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed or severed as improperly joined.

The claims that Plaintiff attempts to raise in this lawsuit are not properly joined under Rule 18 or 20. Even if Plaintiff sustained his injury during the July 31, 2015 riot, his treatment by Dr. Igbinosa is not part of the same transaction, occurrence, or series of transactions as the failure to protect claim. Plaintiff cannot bring these unrelated claims in a single lawsuit, but must bring these claims in separate lawsuits. In filing his amended complaint, Plaintiff needs to decide which of these claims he wishes to proceed on in this action. If Plaintiff continues to bring unrelated claims in his amended complaint, the Court will decide which of the claims will proceed in this action.

**F.     Equitable Relief**

Plaintiff seeks declaratory and injunctive relief in this action.

1.     Declaratory Relief

Plaintiff seeks a declaratory judgment that the actions of the defendants violated his federal rights. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank

14

of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary in this action. Plaintiff's request for declaratory relief is dismissed without leave to amend.

2. Injunctive Relief

Plaintiff seeks injunctive relief ordering defendants to cease and desist from: racially classifying and housing by race STG members, gang members, and their associates; allowing STG members, gang members, and their associates to operate on and control the day to day atmosphere on the general population facilities, prison yards, and housing units; and allowing STG members, gang members, and their affiliates to punish and reprimand other non-affiliated prisoners for violating prison gang politics and rules. Further, Plaintiff seeks to immediately require CDCR to comply with Title 15, section 3378 by removing all STG members, gang members, and their affiliates from the general population facilities, prison yards, and housing units; separate STG members, gang members and their affiliates by creating general population facilities only for these inmates; and hire enough correctional officers to effectively manage CDCR's serious gang problem.

Requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." " 'A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.' " Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004). Indeed, a court's duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to

second-guess prison administrators, a task for which courts are ill-equipped. Toussaint v. McCarthy, 801 F.2d 1080, 1086 (9th Cir. 1986), abrogated on other grounds by Sandin, 515 U.S. 472.

Further, federal courts only decide live cases and controversies. U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980). When a party lacks a legally cognizable interest in the outcome the issue becomes moot. Id. "Prisoners who have been released from prison or transferred to a different prison may not sue for injunctive relief because they would no longer benefit from having the injunction issued." Rupe v. Cate, 688 F.Supp.2d 1035, 1043 (E.D. Cal. 2010) (citing Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); and Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986)); but see Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001) (claim may not be moot where inmate seeks injunctive relief addressing the system as a whole). In this instance, Plaintiff is no longer incarcerated in the CDCR and since he no longer has a cognizable interest in a preliminary injunction he cannot receive the relief he is requesting. Plaintiff's requests for injunctive relief are dismissed without leave to amend.

**G.  Class Action Claims**

To the extent that Plaintiff's complaint seeks relief on behalf of other non-affiliated disabled inmates, pro se litigants have no authority to represent anyone other than themselves; therefore, they lack the representative capacity to file motions and other documents on behalf of other detainees. See Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997) ("[A] non-lawyer 'has no authority to appear as an attorney for others than himself.' ").

Additionally, Federal Rule of Civil Procedure 23 requires that a party representing a class must be able to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a). The ability to protect the interests of the class depends on the quality of counsel representing the class members. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). The competence of a layman in representing himself is too limited to allow him to risk the rights of others, therefore, an inmate proceeding without the assistance of counsel cannot represent other inmates in a class action. Oxendine, 509 F.2d at 1407. "This rule is an outgrowth not only of the belief that a

1 layman, untutored in the law, cannot 'adequately represent' the interests of the members of the 'class,' but also out of the long-standing general prohibition against even attorneys acting as both class representative and counsel for the class." Huddleston v. Duckworth, 97 F.R.D. 512, 514 (N.D. Ind. 1983). Plaintiff cannot prosecute this action on behalf of other inmates.

### H. Amended Complaint

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiff shall be granted an opportunity to file an amended complaint.

Plaintiff is advised that under Twombly and Iqbal "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. This requires factual content for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. Id. Further, while the court is to accept all "well pleaded factual allegations" in the complaint as true, id. at 679, it is not bound to accept as true labels, conclusions, formulaic recitations of the elements of a cause of action or legal conclusions couched as factual allegations, Twombly, 550 U.S. at 555. Finally, the conclusory allegations in the complaint are not entitled to the presumption of truth. Iqbal, 556 U.S. at 681.

Additionally, the Court finds that 25 pages, excluding exhibits, is sufficient for Plaintiff to identify his claims and set forth specific facts in support of those claims. Therefore, Plaintiff's amended complaint shall not exceed 25 pages, double spaced, Times New Roman or similar 12 point font, and may not contain any legal argument or case citations. Plaintiff's amended complaint will be stricken from the record if it fails to comply with this requirement.

/ / /
/ / /
/ / /
/ / /
/ / /

# IV.

# CONCLUSION AND ORDER

For the reasons stated, Plaintiff's complaint does not state a cognizable claim for relief for a violation of his federal rights. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. 662, 678. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be complete in itself without reference to the prior or superseded pleading," Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff an amended civil rights complaint form;
2. Plaintiff's complaint, filed June 12, 2017, is dismissed for failure to state a cognizable claim;
3. Plaintiff's claim for declaratory relief and claims for injunctive relief are dismissed without leave to amend;
4. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint which shall not exceed twenty-five (25) pages, excluding

exhibits; and

5. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated: __**August 23, 2017**__  
_____  
UNITED STATES MAGISTRATE JUDGE